**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5130-17T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

TRACY S. ANDERSON, a/k/a
DWAYNE ANDERSON, and
TYQUAM,

    Defendant-Appellant.

_____

Argued telephonically June 1, 2020 –
Decided July 7, 2020

Before Judges Rothstadt and Mitterhoff.

On appeal from the Superior Court of New Jersey, Law
Division, Monmouth County, Indictment Nos. 16-02-
0303, 16-04-0666, 17-03-0437, and Accusation Nos.
16-11-1871, 16-11-1872.

Zachary Gilbert Markarian, Assistant Deputy Public
Defender, argued the cause for appellant (Joseph E.
Krakora, Public Defender, attorney; Zachary Gilbert
Markarian, of counsel and on the briefs).

Maura Kathryn Tully, Assistant Prosecutor, argued the cause for respondent (Christopher J. Gramiccioni, Monmouth County Prosecutor, attorney; Maura Kathryn Tully, of counsel and on the brief).

PER CURIAM

Defendant Tracy S. Anderson appeals from a July 14, 2017 order that denied his motion to suppress. After the judge entered the order, defendant pled guilty to third-degree possession of a controlled dangerous substance (CDS), N.J.S.A. 2C:35-10(a)(l), and second-degree possession of a CDS with intent to distribute while on or within 500 feet of a public housing facility, N.J.S.A. 2C:35-7.1.[1]

On appeal, defendant raises the following arguments:

POINT I

OFFICERS LACKED SPECIFIC, ARTICULABLE FACTS SUPPORTING THEIR DECISION TO IMMEDIATELY FRISK [DEFENDANT] AFTER STOPPING HIM FOR A TRAFFIC VIOLATION. THE NARCOTICS FOUND AS A RESULT OF THE FRISK MUST BE SUPPRESSED.

POINT II

OFFICER LEDET'S QUESTIONING OF [DEFENDANT] DURING THE PAT[-]DOWN SEARCH EXCEEDED THE PERMISSIBLE SCOPE

---

[1] Defendant previously pled guilty on separate drug charges and was awaiting sentencing on the prior conviction at the time of the instant offenses.

OF THE FRISK FOR WEAPONS AND VIOLATED
HIS RIGHT AGAINST SELF-INCRIMINATION.

Finding no merit in defendant's arguments, we affirm substantially for the reasons expressed in Judge Leslie-Ann M. Justus' oral opinion. Thus, we summarize the pertinent facts and add only the following.

Between September 2015 and August 2016, defendant was arrested on four separate occasions for various offenses related to the sale of a CDS. In November 2016, defendant pled guilty to third-degree possession of a CDS, N.J.S.A. 2C:35-10(a)(l); third-degree resisting arrest, N.J.S.A. 2C:29-2(a)(3); and two separate instances of third-degree possession of heroin with intent to distribute on or within 1000 feet of school property, N.J.S.A. 2C:35-7.

After defendant's November 2016 plea, but before sentencing, a confidential informant (CI), who had provided helpful information in prior narcotics investigations, informed Patrolman Mysonn Ledet of the Neptune Township Police Department (NTPD) that defendant was selling narcotics in Neptune Township (Neptune) in the parking lots for the Parke Warner Pharmacy, Wawa, and Auto Zone. Law enforcement considered these locations to be high-crime areas. The CI detailed that defendant would arrange for buyers to meet him at these places, and he would sell them drugs while he remained in

his car. The CI also informed Ledet that defendant drove a Ford Taurus with license plate number K68HHA.

The CI's report was corroborated by the Asbury Park Street Crime Unit, which informed Ledet that defendant was selling drugs in Neptune, and by individuals the NTPD had arrested, who told the police that defendant was selling narcotics. Based on this information, the NTPD began to surveil defendant, and Ledet conducted thorough background checks. Ledet discovered defendant's prior arrests and criminal record, which included aggravated assault against law enforcement officers and resisting arrest. Ledet also obtained a photograph of defendant and confirmed that he owned a Ford Taurus with license plate number K68HHA.

On January 31, 2017, the CI informed the NTPD that defendant would shortly be en route to sell heroin in the Parke Warner Pharmacy parking lot. Around 4:00 p.m. on that day, Ledet and another officer positioned themselves at the intersection of Heck Avenue and Atkins Avenue in Neptune. After about ten minutes, Ledet observed defendant's Ford Taurus speed past him, and Ledet began to follow. Defendant subsequently made a sudden right-hand turn without signaling, and Ledet activated his overhead emergency lights and siren. Ledet

4

then observed defendant reach around both the front seat and passenger seat areas, as if to retrieve or conceal something.

Defendant did not come to an immediate stop. He continued and eventually rolled over a curb in the Parke Warner Pharmacy parking lot, while still shuffling around inside his car. He entered the parking lot at a section at which there was no entrance. Defendant did not park in the first available parking spot, passing by several spots before stopping.

After defendant parked, Ledet exited his vehicle and approached defendant's vehicle, confirming that defendant was the driver and his girlfriend was the front-seat passenger. Ledet ordered defendant to exit the vehicle and show his hands. Defendant complied, and Ledet patted him down. At this time, three other officers arrived on scene in separate vehicles to provide backup.

While patting down defendant, Ledet asked him, "Do you have anything on you that I need to know about[?]" Defendant responded that he had Oxycodone in his pocket, and he handed Ledet a napkin containing five Oxycodone tablets. Ledet arrested and handcuffed defendant around 4:04 p.m. and then searched his person, finding $1,328 in cash. While defendant was still handcuffed and was standing between both vehicles, Ledet asked him for consent to search his car.

Defendant granted Ledet consent to search the car and signed a consent to search form. The form stipulated that defendant was advised of his rights pertaining to the search of his car, and it listed those rights. Ledet read the entire form to defendant, provision by provision. Defendant initialed the form under each of the provisions as they were read, and Ledet and another officer signed the form. The form indicated that it was executed at 4:10 p.m. To allow defendant to both sign and initial the document, Ledet had removed the handcuffs from defendant's right hand while he reviewed the form with defendant.

Two officers removed defendant's girlfriend from the vehicle and began to search it, while three officers remained with defendant next to Ledet's patrol vehicle. The officers searched the area by the front passenger seat, where defendant had been observed reaching toward while being followed, and they discovered a plastic bag between the front passenger side door and seat that contained heroin. The officers arrested defendant's girlfriend and transported her and defendant to police headquarters.

Ledet read defendant his Miranda[2] rights at police headquarters, and defendant waived his rights. Defendant admitted that when he was stopped, he

---

[2] See Miranda v. Arizona, 384 U.S. 436, 444-45 (1966).

was on his way to sell heroin. He also stated that after he realized Ledet was pulling him over, he gave the heroin to his girlfriend.

A Monmouth County grand jury indicted defendant on two counts of third-degree possession of a CDS, N.J.S.A. 2C:35-10(a)(l) (counts one and five); one count of third-degree possession of a CDS with intent to distribute, N.J.S.A. 2C:35-5(b)(3) (count two); one count of third-degree possession of a CDS with intent to distribute, while on or within 1000 feet of school property, N.J.S.A. 2C:35-7 (count three); and one count of second-degree possession of a CDS with intent to distribute while on or within 500 feet of a public housing facility, N.J.S.A. 2C:35-7.1 (count four).

In April 2017, defendant moved to suppress his inculpatory statements and the physical evidence of heroin and Oxycodone. Judge Justus held a hearing on June 13, 2017. At the hearing, the State called Ledet as a witness. As to his decision to frisk defendant, Ledet testified on direct,

> I conducted the pat[-]down for weapons obviously because of [defendant's] movements in the vehicle. He was reaching under the seat. He was reaching under the passenger seat. I didn't know what he was reaching for as well as the information that him selling narcotics, I know that drug dealers usually carry weapons on them, you know for their own protection of their property and also their drugs. So for officer safety, I patted him down, make sure he had any weapons.

7

On July 14, 2017, Judge Justus denied defendant's motion to suppress. She found Ledet credible and accepted his testimony, and she found that the CI was reliable. The judge determined that defendant's failure to use his turn signal when turning was a violation of N.J.S.A. 39:4-126, thereby justifying the stop. Given defendant's initial failure to stop, his movements inside the vehicle, and the fact that the stop occurred in a high crime area, it was reasonable for Ledet to ask defendant to exit his vehicle. Ledet's question during the pat-down was appropriate, as it was intended to ensure the officer's safety. Further, the judge concluded that the evidence seized from defendant's vehicle should not be suppressed, as defendant knowingly and voluntarily consented to the search. Defendant signed the consent form while he was still outside of the patrol car. Additionally, he had signed consent forms on two prior occasions, and during one of those instances, he initially refused to consent. The judge found defendant was "well aware of his right not to consent."

On December 8, 2017, defendant pled guilty to third-degree possession of a CDS with intent to distribute, N.J.S.A. 2C:35-5(b)(3), and second-degree possession of a CDS with intent to distribute while on or within 500 feet of a public housing facility, N.J.S.A. 2C:35-7.1. In return, the State agreed to dismiss all remaining charges in the indictment and recommended a total of ten

years' imprisonment, subject to fifty-seven months of parole ineligibility, to run consecutive to the sentences imposed in defendant's other pending matters.

On March 23, 2018, the sentencing judge sentenced defendant to the recommended term and ordered that it run concurrent to his other sentences. The judge entered corresponding judgments of conviction and orders for commitment. This appeal ensued.

Our review of a determination of a motion to suppress evidence is limited, and we defer to "the [trial] judge's factual findings so long as sufficient credible evidence in the record supports those findings." State v. Gonzales, 227 N.J. 77, 101 (2016). Such findings will not be disturbed, even if an opportunity for independent review might lead to a different conclusion. State v. Johnson, 42 N.J. 146, 162 (1964). However, a trial judge's legal conclusions are not afforded the same deference. State v. Handy, 206 N.J. 39, 45 (2011). Whether established facts warrant the grant or denial of a suppression motion is a legal question subject to de novo review. Ibid.; see State v. Mann, 203 N.J. 328, 337 (2010).

A police officer may conduct a pat-down search for weapons if he or she has a reasonable belief that the suspect is armed and dangerous, regardless of whether there is probable cause for arrest. Terry v. Ohio, 392 U.S. 1, 27 (1968);

see State v. Thomas, 110 N.J. 673, 679 (1988). "The reasonableness of the search . . . is to be measured by an objective standard. . . . The officer must be able 'to point to particular facts from which he [or she] reasonably inferred that the individual was armed and dangerous.'" Thomas, 110 N.J. at 679 (quoting Sibron v. New York, 392 U.S. 40, 64 (1968)). To determine whether an objectively reasonable suspicion exists, the judge must look at the totality of the circumstances and determine whether "the circumstances create[d] an objectively reasonable concern for the officer['s] safety." State v. Roach, 172 N.J. 19, 29 (2002). "Facts that might seem innocent when viewed in isolation can sustain a finding of reasonable suspicion when considered in the aggregate, so long as the officer maintains an objectively reasonable belief that the collective circumstances are consistent with criminal conduct." State v. Nishina, 175 N.J. 502, 511 (2003).

Here, the judge concluded that the CI's information, considered jointly with the other facts, gave Ledet sufficient reason to pat-down defendant after he exited the vehicle.[3] She found that by reaching toward the passenger seat,

---

[3] We find no reason to disturb the judge's finding that the CI was credible as that finding is amply supported by evidence in the record: the CI had proven reliable in the past, see State v. Sullivan, 169 N.J. 204, 213 (2001); the CI provided specific information that was accurate on the date of defendant's arrest,

A-5130-17T4

defendant appeared to be giving something to his girlfriend that he did not want the police to find.[4]  The judge also stressed that defendant did not immediately pull over after Ledet activated his lights and siren, and went over the curb to park in the parking lot through an area that lacked an entrance.  She also emphasized that defendant did not immediately park in vacant spaces in the lot, unnecessarily moving down several spaces, and this stop occurred in an area with high rates of drug activity.  Thus, the judge concluded that based on the totality of the circumstances, there were specific and articulable facts creating a reasonable suspicion that defendant was armed and dangerous.  This finding is amply supported by the record, and we see no basis to disturb it.

We also reject defendant's argument that Ledet impermissibly questioned him during the pat-down without reading him his <u>Miranda</u> rights, so his statement that he had unprescribed Oxycodone in his pocket should have been

see <u>State v. Smith</u>, 155 N.J. 83, 95 (1998) (explaining that a CI's basis of knowledge may be deemed reliable where he or she "provid[es] sufficient detail in the tip or recount[s] information that could not otherwise be attributed to circulating rumors or be easily gleaned by a casual observer"); and the NTPD, other arrestees, and background checks revealing defendant's extensive drug-dealing activities corroborated the CI's tip, <u>see</u> <u>Sullivan</u>, 169 N.J. at 214.

[4]  Contrary to defendant's arguments, when considered jointly with the other circumstances, nervousness and furtive gestures may ripen into a reasonable suspicion that a person is armed or dangerous.  <u>See</u> <u>State v. Carty</u>, 170 N.J. 632, 648, <u>modified on other grounds</u>, 174 N.J. 351 (2002).

suppressed. "[T]he protections provided by Miranda are only invoked when a person is both in custody and subjected to police interrogation." State v. Hubbard, 222 N.J. 249, 266 (2015). "The critical determinant of custody is whether there has been a significant deprivation of the suspect's freedom of action based on the objective circumstances, including the time and place of the interrogation, the status of the interrogator, the status of the suspect, and other such factors." State v. P.Z., 152 N.J. 86, 103 (1997). Interrogation refers to express questioning or "any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response." Hubbard, 222 N.J. at 267 (quoting Rhode Island v. Innis, 446 U.S. 291, 301 (1980)).

Here, the judge concluded that Ledet's questioning whether defendant had anything on him that Ledet should know about was not an interrogation. She determined that "[Ledet] testified credibly that he asked defendant this question while patting [defendant] down so that . . . [he] would be aware of any weapons or sharp objects that would harm [him] doing the pat[-]down." The judge found that while defendant was in custody at this time, this inquiry was investigatory but not an interrogation; thus, Ledet did not need to read defendant his Miranda rights before asking the question. See Hubbard, 222 N.J. at 266.

We agree with the judge's determination that Ledet was not interrogating defendant. "Despite the restraint on freedom of action involved in <u>Terry</u> and traffic stops, an officer is not required to give <u>Miranda</u> warnings before asking questions reasonably related to dispelling or confirming suspicions that justify the detention." <u>State v. Smith</u>, 374 N.J. Super. 425, 431 (App. Div. 2005); <u>Berkemer v. McCarty</u>, 468 U.S. 420, 439-40 (1984). Ledet's inquiry occurred during the pat-down and was intended to gauge whether defendant possessed anything that could harm the officer, and such inquiry was justified by a reasonable suspicion that defendant had a weapon. The questioning was brief and not intended to elicit anything further than what was necessary to ensure the officer's safety.

To the extent we have not addressed any of the parties' remaining arguments, we conclude that they are without sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5130-17T4