# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0303-22

STATE IN THE INTEREST
OF H.M., a juvenile.

_____

Submitted November 13, 2023 — Decided November 27, 2023

Before Judges Sabatino and Mawla.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket Nos. FJ-07-0728-22 and FJ-07-0729-22.

Joseph E. Krakora, Public Defender, attorney for appellant H.M. (Michael Timothy Denny, Assistant Deputy Public Defender, of counsel and on the brief).

Theodore N. Stephens II, Acting Essex County Prosecutor, attorney for respondent State of New Jersey (Braden Bendon Couch, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Appellant H.M.[1] appeals from a July 8, 2022 order denying his motion to suppress evidence from a frisk of his person during a motor vehicle stop. We affirm.

The facts were developed at a suppression hearing conducted by Judge Melinda Hawkins-Taylor. The State offered the testimony of Officer Samuel Gonzalez, a six-year veteran of the Newark Police Department, and other evidence, including the officer's bodycam video of the incident.

While parked near an intersection, Officer Gonzalez observed an SUV tailgating another vehicle and nearly strike it from behind. He decided to pull the vehicle over and, when he got behind the vehicle, it pulled over quickly without using its signal light. The driver then exited the vehicle and began walking away. Officer Gonzalez ordered the driver back into the vehicle. H.M. occupied the front passenger seat. There was also another juvenile in the back seat. From the onset, the driver was combative and noncooperative. As a result, and because Officer Gonzalez was outnumbered, he called for backup.

The driver refused to give the officer his license and credentials, despite multiple requests. He also told the officer to "call Bowers" and when the officer declined, the driver replied, "that's what the last cop said." The officer

---

[1] We use appellant's initials because he is a juvenile. R. 1:38-3(d)(8).

A-0303-22

interpreted this as a threat to have a higher authority intervene in the matter. Officer Gonzalez informed the driver he stopped him because he almost hit another vehicle while tailgating. The driver argued it was the other car that almost hit his, which the officer noted was impossible since it was in front of him and obeyed the traffic laws by stopping at a stop sign. When the officer asked H.M. and the other occupant for their credentials, the driver interrupted and said they were minors. The officer then asked them for their dates of birth. Neither H.M. nor the other passenger had identification.

Officer Kemp[2] and a second officer arrived on scene. Officer Gonzalez asked the driver to step out of the vehicle and frisked him. He found nothing and the driver returned to his seat. While the other officers remained with the vehicle, Officer Gonzalez returned to his patrol car to run the SUV's license plate and perform a record check. He testified that, before receiving the results of the check, he thought about "something . . . strange that [he] previously saw at the time." He remembered seeing "subtle movements the front passenger was giving off at the time." He stopped writing the ticket, exited his vehicle, and returned to the SUV to continue the investigation.

---

[2] The record does not contain Officer Kemp's first name.

A-0303-22

Officer Gonzalez continued asking the driver why he pulled over so quickly and exited the vehicle. The driver now claimed the vehicle was overheating. Officer Gonzalez pointed out the vehicle was cold. When he told Officer Kemp to frisk the occupants, the driver objected and claimed he was calling his lawyer. Officer Kemp opened the passenger door to remove H.M., but H.M. objected and told the officer to stop touching him. The driver continued to intercede, removed the keys from the ignition, and attempted to hand them to Officer Gonzalez. After further argument with the officers, H.M. eventually exited the vehicle. Officer Kemp searched him and found nothing. Officer Gonzalez was standing by the driver's door and could see H.M. re-entering the vehicle. As H.M. was doing so, Officer Gonzalez noticed he grabbed the front of his pants as he was sitting back down.

Officer Gonzalez immediately asked Officer Kemp whether he had "checked what's sitting between [H.M.'s] legs?" Officer Kemp responded, "[he's] got something between his legs?" Officer Gonzalez then said, "[h]e grabbed it again." H.M. stepped out of the car, and Officer Kemp frisked him a second time and discovered a gun between his legs near the crotch area of his pants.

4

H.M. moved to suppress the gun evidence. He argued: Officer Gonzalez lacked reasonable suspicion for the traffic stop; police exceeded the scope of the stop; H.M.'s removal from the vehicle was unjustified; and both frisks were unlawful.

Officer Gonzalez's testimony recounted the facts in detail. Judge Hawkins-Taylor found him credible. Her oral opinion contained detailed findings of fact and conclusions of law.

The judge concluded the officer had reasonable suspicion to stop the vehicle because he observed it "driving erratically[,] tailgating another car[,] and almost hit the other vehicle . . . ." She noted the officer "had a clear view of the intersection in which the driver was operating the car in an erratic manner." Moreover, the officer's "verbal description and use of his hands on the witness stand showed a certain level of certainty as to the erratic way in which the car was driving, almost causing an accident." Further, the bodycam footage recorded that, when Officer Gonzalez told the driver his version of the incident was "impossible[,] . . . the driver said nothing."

The judge concluded the scope of the traffic stop was lawful. She found the call for backup officers "did not extend the duration of the stop, which lasted approximately [twelve] minutes." Rather, "the responses and behaviors of the

5

driver and his occupants . . . prolonged the stop and gave rise to suspicion unrelated to the stop." Indeed, the distraction tactics included the "[d]river pull[ing] over and jump[ing] out of the car" and when "the [o]fficer ordered the driver back in the car" he did not want to return, causing Officer Gonzalez to request back up "stating, 'I got trouble here.'" Later, the driver falsely claimed his vehicle was overheating. Additionally, the trial judge found: the "driver was asked multiple times for his ID and license . . . [and] constantly questioned why he was stopped, even after the [o]fficer told him why"; "[t]he driver began to name drop . . . after being asked for his credentials"; "[t]he driver attempted . . . to open the door and exit . . . [and] got on the phone . . . while the [o]fficer was standing there questioning them"; "[t]he driver instructed the police as to how minors should be handled in police encounters"; and "[t]he driver handed the [o]fficer the keys, when he was not asked" to do so. The judge concluded "the driver and the occupants were combative, uncooperative, sarcastic, even stalling. . . . And the [o]fficer was justified in . . . broadening the inquiry."

The judge found the totality of the circumstances warranted removing H.M. from the vehicle. The circumstances included "tactics to deflect" and Officer Gonzalez "saw [H.M.] touch his waistband area" and "act[] nervous." She found the first pat-down was justified as a protective search for "the officer's

6

safety . . . ." She rejected H.M.'s argument there were no facts that would lead police to believe the occupants were armed and dangerous because "[f]rom the first encounter[,] the driver and the occupants were utilizing . . . tactics to distract the [o]fficer. Moreover, . . . [Officer Gonzalez] testified that once he sat in his vehicle for a few minutes, when he was calling in the driver's credentials, he reflected on what he observed." The judge concluded "the [o]fficer's explanation [was] reasonable and . . . made sense . . . ."

The judge found the second pat-down was justified because new facts arose following the first pat-down "that revive[d] protection concerns, including the realization that the first pat[-]down was performed inadequately. State v. Carrillo, 469 N.J. Super. 318, [340] (App. Div. 2021)." The "new facts" were that "Officer Gonzalez observed [H.M.] . . . grab his waistband area" when getting back in the vehicle. Indeed, Officer Gonzalez testified H.M. "clinched" his waistband area as if "a heavy object" was there.

On appeal, H.M. argues as follows:

> POINT I    THE TRIAL COURT ERRED WHEN IT DETERMINED THERE WAS REASONABLE SUSPICION TO STOP THE CAR FOR A TRAFFIC OFFENSE.
>
> A. Failure to use a turn signal when parking is not an automatic motor vehicle violation.

A-0303-22

B. The testimony regarding following too closely and careless driving was insufficient.

POINT II POLICE DID NOT HAVE A RE[A]SONABLE AND ARTICULABLE SUSPICION TO BELIEVE THAT H.M. WAS ARMED, THEREFORE THE FRISK OF HIS PERSON WAS ILLEGAL.

"Appellate courts reviewing a . . . denial of a motion to suppress must uphold the factual findings underlying the trial court's decision so long as those findings are supported by sufficient credible evidence in the record." State v. Lamb, 218 N.J. 300, 313 (2014) (citing State v. Elders, 192 N.J. 224, 243 (2007)). "Thus, appellate courts should reverse only when the trial court's determination is 'so clearly mistaken "that the interests of justice demand intervention and correction."'" Ibid. (quoting Elders, 192 N.J. at 244). However, "a trial court's legal conclusions are reviewed de novo." Ibid. (citing State v. Gandhi, 201 N.J. 161, 176 (2010)).

"To be lawful, an automobile stop 'must be based on reasonable and articulable suspicion that an offense, including a minor traffic offense, has been or is being committed.'" State v. Bacome, 228 N.J. 94, 103 (2017) (quoting State v. Carty, 170 N.J. 632, 639-40, modified on other grounds, 174 N.J. 351 (2002)). The reasonable suspicion standard requires "some minimal level of

8

objective justification for making the stop." State v. Nishina, 175 N.J. 502, 511 (2003) (quoting U. S. v. Sokolow, 490 U.S. 1, 7 (1989)).

After a lawful stop, police may need to conduct a frisk for officer safety. Terry v. Ohio, 392 U.S. 1, 27 (1968). A brief pat-down search will be justified if "a reasonably prudent person would be warranted in the belief that [their] safety or that of others was in danger." State v. Lund, 119 N.J. 35, 45 (1990) (citing State v. Thomas, 110 N.J. 673, 685 (1998)). "The essence of this standard is 'that the totality of the circumstances—the whole picture—must be taken into account. Based upon that whole picture the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" Thomas, 110 N.J. at 678.

"[T]he validity of the pat-down [is] an independent inquiry from the order to step out of the vehicle." State v. Smith, 134 N.J. 599, 609 (1994) (citing PA. v. Mimms, 434 U.S. 106, 109 (1977)). To alight a passenger from the vehicle, there must be "some fact or facts in the totality of the circumstances that would create . . . a heightened awareness of danger . . . ." Id. at 618. "[T]o justify a pat-down of an occupant once alighted from a vehicle, specific, articulable facts must demonstrate that a 'reasonably prudent [person] in the circumstances would

9

be warranted in the belief that [their] safety or that of others was in danger.'" Id. at 619 (quoting Terry, 392 U.S. at 27).

Pursuant to these principles, we affirm the denial of H.M.'s suppression motion for the reasons expressed in Judge Hawkins-Taylor's thorough and well-reasoned opinion. The motor vehicle stop was clearly valid because Officer Gonzalez witnessed the driver operating the SUV in an erratic manner, nearly causing an accident. The record supports the officer's testimony the occupants' conduct, and H.M. grabbing his waistband as he sat in the passenger seat, and when he returned to it, justified both frisks. The judge's decision is supported by the credible evidence in the record, and her legal conclusions were unassailable.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0303-22