# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2644-22

STATE IN THE INTEREST
OF D.M., a juvenile.

_____

Submitted May 13, 2024 – Decided May 20, 2024

Before Judges Mawla and Chase.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Union County, Docket No. FJ-20-0070-23.

Jennifer Nicole Sellitti, Public Defender, attorney for appellant D.M. (Michael Timothy Denny, Assistant Deputy Public Defender, of counsel and on the brief).

William A. Daniel, Union County Prosecutor, attorney for respondent State of New Jersey (Milton Samuel Leibowitz, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Appellant D.M. appeals from a March 9, 2023 adjudication of delinquency for acts that, if committed by an adult, would constitute third-degree receipt of stolen property, N.J.S.A. 2C:20-7(a). We affirm.

The facts were adduced during a two-day trial during which Judge James P. Wilson heard testimony from the following witnesses on behalf of the State: Plainfield Police Officers Hassan Edwards and Kevin Encinas; the victim's sister; and the victim. D.M. and his father testified on D.M.'s behalf. The judge concluded the State's witnesses were all credible, D.M. was not credible, and the father's testimony was not helpful to determining whether D.M. committed the offense. The underlying facts were as follows.

On August 22, 2022, the victim, who resided in Perth Amboy, was headed to the laundromat when she noticed her dog had gotten out of her house. She parked her black Honda Accord and left it running while she chased and caught the dog. When she returned, her car was gone. The victim contacted the Perth Amboy Police Department to report the vehicle stolen. She then contacted her sister who used an application on her phone to track the movement of the victim's phone, which the victim had left in her car. The application tracked the vehicle in Plainfield, so the victim called Plainfield police to report the vehicle stolen. The sister and her husband drove around looking for the vehicle and saw it in Plainfield, occupied by two males.

Police dispatch contacted Officer Edwards to investigate the report of a stolen vehicle near Monroe Avenue and West Fifth Street in Plainfield. When

2

he arrived, he observed a black Honda Accord with its trunk open and two males "rummaging" through the trunk. He testified the vehicle matched the description he received from dispatch. As the officer approached and D.M. noticed him, D.M. looked like a "deer in headlights" and looked like he was going to run. The officer ordered D.M. to put his hands on the vehicle and conducted a pat-down.

Officer Edwards discovered no weapons, but the front pocket of D.M.'s sweatshirt revealed a small amount of money and a set of keys. As the officer placed those items back into D.M.'s pocket, D.M. said "just leave the keys out." This comment aroused the officer's suspicion, and he realized the keys belonged to the Honda and placed D.M. under arrest.

At the same time, the victim's sister arrived. When she noticed D.M. and his cohort standing by her sister's car with their hands up, she began cursing at them for stealing the vehicle. The officer ordered her to return to her car, and she complied.

D.M. testified he was seventeen years old on the day of the incident. He claimed he left his grandmother's home in Plainfield and walked twenty minutes to buy ice cream. On the way home he saw "a friend of a friend" on West Fifth Street and Monroe Avenue and, although he had never met the person and only

3

seen him on social media, he stopped to talk to him. He claimed the other juvenile, who was only fourteen years of age, said the car was his and that he wanted to show it to D.M. During the interaction, the friend dropped his keys and D.M. picked them up and put them in his (D.M.'s) pocket. Then the police arrived.

Judge Wilson found the State proved D.M. had stolen the vehicle. As we noted, the judge credited the testimony of the State's witnesses, particularly Officer Edwards' description of D.M.'s suspicious behavior, which led to the pat down and ultimately the juvenile's statement. The judge found D.M.'s "testimony that he just picked up the keys and put them in his pocket when his friend dropped them . . . simply not believable." Indeed, "[i]t made no sense . . . that [D.M.] would just pick up his friend's keys, put them in his pocket and not immediately give them back to his friend." The judge concluded

> the fact that when Officer Edwards approached [D.M.], he was several feet away from the car with the keys still in his pocket . . . by itself suggest[ed D.M.] . . . had no intentions on giving the keys to his friend or anyone else for that matter, and was clearly the one in possession of the keys all along.

The judge found D.M.'s "tone, body language, [and] demeanor [during his testimony] suggest[ed] that he was not telling the truth. He fidgeted in his seat when asked certain questions and his tone changed when he seemed to be unsure

4

about an answer." Moreover, the fact D.M. had never personally met the other juvenile "beg[ged] the question of why he would spend [twenty] minutes talking to him." Furthermore, it was not believable that a fourteen-year-old without a driver's license would have a car. The judge concluded D.M. knew the other juvenile and the car did not belong to him. He also noted D.M. and the other juvenile fit the description of the males the victim's sister saw operating the car.

The judge conducted a disposition hearing on a separate date. He ordered D.M. to serve a fifteen-month term of juvenile intensive supervision and twenty hours of community service.

D.M. raises the following point on appeal:

> POINT I
>
> THE EVIDENCE DISCOVERED DURING THE ILLEGAL SEARCH OF THE JUVENILE SHOULD HAVE BEEN SUPPRESSED. (Not raised below)

Typically, we do not consider questions not properly presented to a trial court, unless the issue raised relates to the jurisdiction of the trial court or concerns a matter of great public interest. Nieder v. Royal Indem. Ins., 62 N.J. 229, 234 (1973). However, this appeal involves the best interests of a juvenile and questions the constitutionality of the pat-down search. For these reasons, we will address the arguments D.M. now raises for the first time on appeal.

5

"The scope of appellate review of a trial court's fact-finding function is limited. The general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Cesare v. Cesare, 154 N.J. 394, 411-12 (1998) (citing Rova Farms Resort, Inc. v. Invs. Ins., 65 N.J. 474, 484 (1974)). "Deference is especially appropriate 'when the evidence is largely testimonial and involves questions of credibility.'" Id. at 412 (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)). Moreover, "[b]ecause of the family courts' special jurisdiction and expertise in family matters, appellate courts should accord deference to family court factfinding." Id. at 413. However, we do not defer to the judge's legal conclusions if "based upon a misunderstanding of . . . applicable legal principles." T.M.S. v. W.C.P., 450 N.J. Super. 499, 502 (App. Div. 2017) (quoting N.T.B. v. D.D.B., 442 N.J. Super. 205, 215 (App. Div. 2015)).

D.M. argues Officer Edwards exceeded the scope of a permissible frisk when he put his hand inside D.M.'s pocket during the pat down. He claims the circumstances did not warrant such an escalation in the search and the judge "should have suppressed the evidence sua sponte because the violation was obvious." We are unpersuaded.

An investigative detention, or a Terry stop, is an intrusion that requires a certain level of justification. Terry v. Ohio, 392 U.S. 1 (1968). "Because an investigative detention is a temporary seizure that restricts a person's movement, it must be based on an officer's 'reasonable and particularized suspicion . . . that an individual has just engaged in, or was about to engage in, criminal activity.'" State v. Rosario, 229 N.J. 263, 272 (2017) (quoting State v. Stovall, 170 N.J. 346, 356 (2002)).

After a lawful stop, police may need to conduct a frisk for officer safety. Terry, 392 U.S. at 27. A brief pat-down search will be justified if "a reasonably prudent person would be warranted in the belief that [their] safety or that of others was in danger." State v. Lund, 119 N.J. 35, 45 (1990) (citing State v. Thomas, 110 N.J. 673, 685 (1988)). "The essence of this standard is 'that the totality of the circumstances—the whole picture—must be taken into account. Based upon that whole picture the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" Thomas, 110 N.J. at 678.

Pursuant to these principles, and given the totality of the circumstances, we conclude Officer Edward's stop and frisk of D.M. was constitutional. Indeed, he was dispatched to the location of a reported stolen vehicle, the vehicle he

A-2644-22

observed D.M. and the other juvenile rummaging through matched the stolen vehicle's description, and D.M.'s conduct upon interacting with the officer provided the particularized and objective basis to pat down D.M. for safety reasons. In other words, the circumstances demonstrated a reasonable and articulable suspicion the juveniles were the car thieves and therefore dangerous. Thus, the officer was justified in removing a hard object from D.M.'s pocket, the set of keys, which could have been a weapon.

We note Officer Edwards did not expand the scope of the search. Once he discovered the keys were not a weapon, it was D.M. who then spoke out and gave the officer information that signaled the keys in D.M.'s possession belonged to the stolen vehicle. This became more evident once the victim's sister arrived on scene and accused D.M. of stealing her sister's vehicle. Officer Edwards' reasonable suspicion ripened into probable cause leading to D.M.'s arrest.

A valid search incident to arrest requires police to have had probable cause to arrest. State v. Dangerfield, 171 N.J. 446, 456 (2002). "The standards for determining probable cause to arrest and probable cause to search are identical." State v. Moore, 181 N.J. 40, 45 (2004). "Probable cause exists where the facts and circumstances within . . . [the officers'] knowledge and of which they had

reasonably trustworthy information [are] sufficient in themselves to warrant a [person] of reasonable caution in the belief that an offense has been or is being committed." Schneider v. Simonini, 163 N.J. 336, 361 (2000) (alterations in original) (internal quotation marks omitted). In determining whether probable cause exists, we must view the totality of the circumstances from the standpoint of an objectively reasonable officer. State v. Gibson, 218 N.J. 277, 293 (2014). The personal observations of law enforcement officers are generally regarded as highly reliable and sufficient to establish probable cause. See State v. O'Neal, 190 N.J. 601, 613-14 (2007); Moore, 181 N.J. at 46-47. A search incident to arrest is valid if it does not exceed the arrestee's person and the area "within his immediate control." Chimel v. California, 395 U.S. 752, 763 (1969).

The totality of the circumstances demonstrates that if D.M. had challenged the search, the evidence would have been admissible as a search incident to arrest. Under the facts and circumstances, Officer Edwards had probable cause to arrest D.M. A motion to suppress would not have prevailed because the stop and frisk, arrest, and the seizure were lawful.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

9

A-2644-22