**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1902-18T3

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

ELADIO ECHARTEVERA,

    Defendant-Appellant.

_____

Argued October 28, 2020 – Decided November 30, 2020

Before Judges Geiger and Mitterhoff.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 17-12-1468.

Susan L. Romeo, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Susan L. Romeo, of counsel and on the brief).

Patrick F. Galdieri, II, Assistant Prosecutor, argued the cause for respondent (Yolanda Ciccone, Middlesex County Prosecutor, attorney; Patrick F. Galdieri, II, of counsel and on the brief).

PER CURIAM

Defendant Eladio Echartevera appeals from a June 25, 2018 order denying his motion to suppress physical evidence and a December 24, 2018 judgment of conviction following a jury trial. We conclude the trial court erred by deciding the motion without conducting an evidentiary hearing. Accordingly, we vacate the order and remand.

We derive the following facts from the evidence presented at trial. On August 23, 2017, Detective Jessica DeJesus of the Perth Amboy Police Department was patrolling an area in Perth Amboy that was known to law enforcement for high rates of narcotics activity. DeJesus was dressed in plain clothes, seated in an unmarked police vehicle. DeJesus observed Kristy Seifred, a known drug user, "pacing back and forth in the area." Seifred repeatedly checked her cellphone and "look[ed] around the area as if waiting for someone to arrive." (5T49:4-8). DeJesus focused her surveillance on Seifred and called for backup.

Shortly thereafter, a U-Haul van appeared and parked "in the yellow line facing south[]bound on Goodwin Street, just prior to the intersection of

Goodwin and Market."  Defendant, who was identified as the driver of the van,[1] began to honk his horn and motion in the direction of Seifred, who then gestured back to defendant and began to approach his van.  DeJesus and other officers, who had arrived at the scene, exited their vehicles and approached defendant's van with their badges displayed.[2]  As the officers approached, DeJesus and Detective Matthew Vasquez "observed [d]efendant move his hands quickly to his waistline as if he was attempting to conceal something."

Officers removed defendant from the van, and Vasquez patted him down for weapons.  Vasquez claimed he "immediately noticed a large bulge in [defendant's] front waistline area[,] which was not consistent with the clothes he was wearing."  Vasquez further claimed that as he began to feel this area, defendant quickly moved his hands to his waistline and attempted to brush Vasquez's hands away.  At this time, Vasquez searched the waistline area and uncovered a "clear plastic bag containing approximately [133] white glassine envelopes containing a beige powdery substance believed to be heroin"; fifty of

---

[1]  A female passenger in the van was arrested because she had outstanding warrants.  The passenger had no drugs on her person and is otherwise uninvolved in this appeal.

[2]  At this point, the officers focused their attention on defendant.  Seifred left the area while the officers dealt with defendant.

A-1902-18T3

the glassine envelopes were stamped "Jump Street," fifty-one were stamped "K.O.," and thirty-two were stamped "Afghanistan."

Defendant also possessed $250 in $10 and $20 denominations. Defendant was arrested and transported to police headquarters. The arrest occurred within 1000 feet of a school. Officers searched defendant's vehicle but uncovered no additional drugs.

In addition to being charged with several indictable drug offenses, defendant was issued summonses for: driving with a suspended license, N.J.S.A. 39:3-40; driving while in possession of a controlled dangerous substance (CDS), N.J.S.A. 39:4-49.1; and illegal parking, N.J.S.A. 39:4-135.

A Middlesex County grand jury returned an indictment charging defendant with: third-degree possession of CDS, N.J.S.A. 2C:35-10(a)(1) (count one); third-degree possession of CDS with intent to distribute, N.J.S.A. 2C:35-5(b)(3) (count two); and third-degree possession of CDS with intent to distribute within 1000 feet of a school zone, N.J.S.A. 2C:35-7(a) (count three).

Defendant moved to suppress the evidence seized from his person on the ground that he was subjected to an illegal warrantless search. The State opposed the motion, contending that: (1) DeJesus had "a reasonable belief that criminal activity was afoot" based on her training and observations; (2) the vehicle stop

was permissible because the van was illegally parked; and (3) the CDS recovered from defendant's person was lawfully obtained pursuant to a valid Terry[3] pat-down.  The State also argued that because defendant did not certify there were any material facts in dispute, the motion should be decided without an evidentiary hearing pursuant to Rule 3:5-7(c).

Defendant's reply brief alleged that when police approached his van, they had "absolutely no probable cause or reasonable suspicion that a crime ha[d] taken place or was about to take place . . . and conducted an illegal warrantless search without any exception to the warrant requirement being present."  As to the clear plastic bag containing 133 white glassine envelopes of heroin that was detected in defendant's waistband during the pat-down for possible weapons, defendant contended:  "The feel of 133 smal[l] packets of heroin in no way g[a]ve rise to an honest belief that [defendant] was in possession of any weapon" that caused "an actual concern" "for officer safety."  The brief asserted that "[t]he facts are in dispute and a testimonial hearing is demanded and required for a proper determination of the legality of the seizure in the case at bar."

During oral argument, the State reiterated its argument that it did not need to present testimony since defendant did not dispute any material facts.

---

[3]  Terry v. Ohio, 392 U.S. 1 (1968).

Defendant argued that an evidentiary hearing was warranted because material facts were in dispute regarding the officers' basis to search him without a warrant. Specifically, defendant claimed that the officers did not have a reasonable suspicion that he was engaged in criminal activity, much less that he was carrying a weapon at the time he was searched. Defense counsel forcefully argued that the police "weren't patting him down for a weapon. They believed he was going to sell drugs to that drug user on the street. They probably put it there." Based on their belief that defendant "was going to sell drugs to that drug user on the street," the police "searched him and they didn't stop searching him until they found drugs in his underwear . . . under the guise of searching for a weapon." Defendant contended that the bag they felt under defendant's waistband did not feel like a weapon, putting DeJesus's credibility "directly in question."

The court responded that the "credibility of a witness or the fact that you're disputing the entire facts, that's not going to cut it for a hearing." The court indicated it would review the parties' submissions and rescheduled the motion.

On June 25, 2018, the court advised counsel that it had decided the motion and issued an order and letter opinion denying defendant's motion to suppress without conducting an evidentiary hearing. Relying on Terry, the court

concluded that "in light of the facts known to [DeJesus] at the time, it was reasonable to briefly stop the [d]efendant in order to determine his identity and also obtain more information." The court stated it was satisfied that numerous "objective justifications" made "reasonable" "to conduct a <u>Terry</u> stop."

The court explained that DeJesus was patrolling an area known for narcotics activity and saw Seifred, a known drug user, acting suspiciously. The court emphasized that DeJesus did not immediately intercede and that she soon saw defendant approach, honk his horn, and waive in the direction of Seifred, who waved back at defendant. The court concluded that "DeJesus believed that a narcotic transaction was imminent . . . [and] proceeded to investigate further. With her observations coupled with her experience and training, Officer DeJesus lawfully approached the [d]efendant's vehicle to conduct a brief investigatory stop." The court concluded that defendant's furtive gestures of "mov[ing] his hands quickly in his waistline as officers were approaching," coupled with other objective facts, "[gave] rise to [a] reasonable and articulable suspicion to conduct a pat-down of the outer layers of [d]efendant's clothing for officer safety." The court also determined that "[u]pon noticing a large bulge inconsistent with [d]efendant's clothing along with [d]efendant quickly moving

A-1902-18T3

the officer's hand from the front waistline, officers were justified to remove whatever item contained in the waistline for their safety."

The court noted that defendant did not challenge the fact that he committed a motor vehicle infraction by parking in a no-parking zone. It found this provided an objectively reasonable basis for officers to approach defendant's vehicle and conduct a traffic stop. "While approaching the vehicle to investigate the motor vehicle infraction, the [d]efendant was observed quickly moving something around his waistline, which gave rise to suspicions for officers to initiate inquiries into matters unrelated to the initial motor vehicle infraction." "[W]hen the pat-down was being conducted, the [d]efendant quickly reached for his front waistline in an attempt to move Detective Vasquez's hands away." The court gleaned all of these facts from the State's written submissions.

The court added that "[d]efendant does not dispute these facts but instead asks the [c]ourt to disregard the officer[s'] observations, experience, training, and the established law in holding that the officers unlawfully approached [d]efendant's vehicle, which the [c]ourt respectfully declines to do." Instead, it found "that a reasonable prudent person put in the officers' position would have reasonably believed that [their] safety or the safety of other persons was

8

threatened." The court held that the evidence was lawfully seized pursuant to a lawful Terry stop and pat-down.

The case proceeded to trial. The State called DeJesus as its first witness. DeJesus testified on direct about her involvement in defendant's arrest on August 23, 2017. The State then called Vasquez, who also testified on direct as to his search of defendant on the date of defendant's arrest. When asked how the glassine envelopes containing heroin were packaged, Vasquez testified: "In this case it appears there's some loose ones throughout here. And there's some wrapped in some rubber bands. Commonly [ten] are wrapped in a rubber band, from my experience."

Next, the State called Daniel J. Muntone, an agent with the Middlesex County Prosecutor's Office assigned to its Narcotics, Gambling and Organized Crime Task Force, as a witness. Muntone was accepted as an expert in fields of drug possession, use, packaging, and distribution activity. He testified on direct that, when sold on the street, heroin is "usually packaged in . . . wax folds. Sometimes these wax folds . . . could have plastic around them, but often times they're just wax folds that they placed a drug in . . . the street term is a deck of heroin or a bag of heroin."

Muntone also described a "deck" of heroin as "one of those wax folds," which typically holds "approximately 0.02 to 0.03 grams of heroin," and explained that a "bundle" of heroin refers to ten decks of heroin. Muntone also testified as to the significance of rubber bands:

> Rubber bands are significant with heroin distribution such that the drug distributor will have a quantity of the drug on them. And a lot of times they'll have them wrapped in those [ten] bags, bundles, and then . . . so you have [ten] bags and it's wrapped in a rubber band. As the individual is distributing, once they sell of the [ten] they'll sometimes stick the rubber band in another pocket. It's really a way to keep track of how much of the drug you've sold.

Muntone also explained that a heroin user is not generally in possession of large quantities because they typically use between one and two bags of heroin when abusing the drug and would usually purchase that same amount of the drug at any one time. They typically do not save heroin for future use. When heroin users are arrested, they might be in possession of "paraphernalia used to ingest the drug" and "sometimes you'll find a small amount of currency on them. Sometimes you'll find empty bags. Sometimes you'll find other drugs on them."

When asked to describe indicators that an individual possesses heroin with the intent to distribute, Muntone testified:

> Well obviously volume. The amount of the drug is one. Individuals that are involved in the drug trade are

A-1902-18T3

involved in it for one reason, to make money. So currency is also a factor. Different types of stamps are a factor, multiple stamps. Those rubber bands that I talked about are a factor. Sometimes weapons come into play. That's a factor. They're . . . typical factors.

On cross-examination, Muntone again confirmed that the possession of rubber bands is indicative of drug possession for the purpose of distribution.

Defendant moved for an acquittal of counts two and three, claiming the State presented insufficient evidence of intent to distribute. Based on Muntone's testimony, the markings on the bags of heroin, the money on defendant, and Seifred's actions, the court held that a jury could convict defendant of these charges and denied defendant's motion.

The jury found defendant guilty on all counts. The court granted the State's motion for a mandatory extended-term sentence on count three and, after merger, imposed an aggregate ten-year term subject to a five-year period of parole ineligibility. This appeal followed.

Defendant raises two points for our consideration:

POINT I

DEFENDANT'S CONVICTION MUST BE REVERSED BECAUSE THE TRIAL COURT'S RESPONSE TO THE JURY'S QUESTION IMPROPERLY PERMITTED IT TO CONCLUDE, WITHOUT ANY FACTUAL BASIS, THAT THE LOOSE RUBBER BANDS IN THE EVIDENCE BAG

WERE FOUND ON DEFENDANT, WHICH WAS HIGHLY PREJUDICIAL IN LIGHT OF THE EXPERT'S TESTIMONY.

POINT II

THE DENIAL OF DEFENDANT'S SUPPRESSION MOTION MUST BE REVERSED, BECAUSE THE POLICE CONDUCTED AN ILLEGAL WARRANTLESS SEARCH WHEN THEY DID A PAT-DOWN OF DEFENDANT WITH NO EVIDENCE THAT HE WAS ARMED AND DANGEROUS.

1. The Suppression Motion And Decision.

2. The Trial Court Made No Finding That The Officers Reasonably Believed Defendant Was Armed And Dangerous And The State Alleged No Factual Basis For The Officers To Believe That Defendant Was Armed And Dangerous.

3. The Trial Court Erred When It Denied Defendant's Request For An Evidentiary Hearing, Because The Officers' Credibility Was Inherently In Dispute.

I.

We first address defendant's argument that the trial court erred by deciding his suppression motion without conducting an evidentiary hearing. We review a trial judge's denial of an evidentiary hearing for abuse of discretion. State v. Broom-Smith, 406 N.J. Super. 228, 239 (App. Div. 2009).

Testimony must be taken during a suppression motion hearing if material facts are in dispute. R. 3:5-7(c). When a defendant moves to suppress evidence seized during a warrantless search, the State must "file a brief, including a statement of the facts as it alleges them to be," and the defendant must then "file a brief and counter statement of facts." R. 3:5-7(b).

A defendant's counterstatement of facts must present "something more than the naked conclusion that the warrantless search was illegal, in order to obtain an evidentiary hearing pursuant to [Rule] 3:5-7(c)." State v. Hewins, 166 N.J. Super. 210, 215 (Law Div. 1979), aff'd, 178 N.J. Super. 360 (App. Div. 1981). "It is only when the defendant's counter statement places material facts in dispute that an evidentiary hearing is required." State v. Green, 346 N.J. Super. 87, 90-91 (App. Div. 2001) (citing Hewins, 166 N.J. Super at 213-15).

In Green, we emphasized "[t]he mere allegation of a warrantless search, with the attendant burden of proof on the State to justify same, does not place material issues in dispute, nor does defendant's assertion that he denies the truth of the State's allegations." Id. at 91 (citing Hewins, 166 N.J. Super. at 214). "In the absence of factual allegations to support the claim that the search and seizure were illegal, a hearing [is] not required." State v. Kadonsky, 288 N.J. Super. 41, 46 (App. Div. 1996).

A-1902-18T3

The trial court concluded that defendant did not dispute any material facts. We disagree. The constitutionality of the Terry pat-down and subsequent search of defendant hinged on several material facts that defendant disputed.

"The Fourth Amendment of the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution prohibit 'unreasonable searches and seizures' by government officials." State v. Hagans, 233 N.J. 30, 38 (2018) (quoting State v. Watts, 223 N.J. 503, 513 (2015)). Because warrantless searches and seizures are presumptively unreasonable, ibid. (quoting State v. Bryant, 227 N.J. 60, 69 (2016)), "the State bears the burden of proving by a preponderance of the evidence that a warrantless search or seizure falls within one of the few well-delineated exceptions to the warrant requirement," State v. Chisum, 236 N.J. 530, 545 (2019) (quoting State v. Mann, 203 N.J. 328, 337-38 (2010)). An investigatory stop is one such exception. State v. Alessi, 240 N.J. 501, 517-18 (2020).

"To lawfully stop a motor vehicle, 'a police officer must have a reasonable and articulable suspicion that the driver of a vehicle, or its occupants, is committing a motor-vehicle violation or a criminal or disorderly persons offense.'" State v. Nyema, ___ N.J. Super. ___, ___ (App. Div. 2020) (slip op. at 10) (quoting State v. Scriven, 226 N.J. 20, 33-34 (2016)). "[I]n determining

the lawfulness of an investigatory stop, a reviewing court must 'evaluate the totality of circumstances surrounding the police-citizen encounter, balancing the State's interest in effective law enforcement against the individual's right to be protected from unwarranted and/or overbearing police intrusions.'" Chisum, 236 N.J. at 546 (alteration in original) (quoting State v. Privott, 203 N.J. 16, 25-26 (2010)).

A police officer may conduct a pat-down search for weapons if he or she has an objectively reasonable belief that the suspect is armed and dangerous regardless of whether there is probable cause for arrest.  Terry, 392 U.S. at 27; see State v. Thomas, 110 N.J. 673, 679 (1988).  Where the pat-down creates a "specific and particularized basis for an objectively reasonable suspicion that [the] defendant [is] armed and dangerous," State v. Roach, 172 N.J. 19, 27 (2002) (emphasis in original) (quoting Thomas, 110 N.J. at 683), "the officer may conduct 'a carefully limited search of the outer clothing . . . in an attempt to discover weapons which might be used to assault him,'" id. at 27 (alteration in original) (quoting Terry, 392 U.S. at 30).  "The search must, however, be 'confined in scope to an intrusion reasonably designed to discover' weapons that might be used to assault the police officer."  Ibid. (quoting Terry at 29).

"Because the intrusion is designed to protect the officer's safety, the standard governing protective searches is 'whether a reasonably prudent man in the circumstances would be warranted in his belief that his safety or that of others was in danger.'" Ibid. (quoting State v. Valentine, 134 N.J. 536, 543 (1994)). "The officer must be able 'to point to particular facts from which he reasonably inferred that the individual was armed and dangerous.'" Thomas, 110 N.J. at 679 (quoting Sibron v. New York, 392 U.S. 40, 64 (1968)). "The existence of an objectively reasonable suspicion is based on the totality of the circumstances." Roach, 172 N.J. at 27 (citing Valentine, 134 N.J. at 546).

Defendant advances two fact-based arguments. First, he contends the Terry pat-down was illegal because the police did not have a reasonable suspicion that he was armed and dangerous. He notes that the State's motion brief neither alleged that the officers had a reason to fear for their safety nor that the officers had prior knowledge that defendant was a drug dealer or was known to be armed. Thus, the State did not produce "specific, articulable facts" that the officers were in danger. State v. Smith, 134 N.J. 599, 619 (1994) (citing Terry, 392 U.S. at 27).

Second, during the pat-down the police felt the bulge under defendant's waistband caused by the bag containing the heroin. Defendant contends that

16

palpating the bag would not give rise to an objectively reasonable belief that he possessed a weapon that threatened officer safety.

These fact-based contentions warranted an evidentiary hearing to afford defendant the opportunity to test the credibility of the officers through cross-examination. Here, there were no dashcam or bodycam recordings of the incident. The State relied solely on the officers' version of what transpired.

The State argued that defendant did not certify there were any material facts in dispute. Rule 3:5-7(b) "does not require defendants to file an affidavit in order to be entitled to a hearing on a motion to suppress evidence" seized during "a warrantless search." State v. Torres, 154 N.J. Super. 169, 173 (App. Div. 1977). Nor is defendant required to file a certification. See R. 3:5-7(b).

In its opposing papers, the State argued that "Va[s]quez could have reasonably believed that . . . defendant had a weapon in his front waistline and was about to use it." While this may have justified the pat-down, the State has not shown that the shape or texture of the bag or its contents would cause an objectively reasonable belief that defendant had secreted a weapon in his pants. Noticeably absent is any claim that the bag felt like a firearm, knife, or other type of weapon. Thus, unlike in Roach, the State has not shown that after observing an unusual bulge in defendant's groin area and patting it down,

Vasquez was unable to determine whether the item causing the bulge was a weapon, necessitating "further action to neutralize any potential threat." 172 N.J. at 29. Squarely at issue is whether the search was "reasonably limited in scope to the accomplishment of the only goal which might conceivably have justified its inception—the protection of the officer by disarming a potentially dangerous man." Sibron, 392 U.S. at 65.

Defendant is entitled to an evidentiary hearing because of the material facts in dispute, including defendant's alleged actions leading up to and during the stop, the credibility of DeJesus and Vasquez regarding the basis for the stop, the pat-down, and the resulting search of defendant, and whether Vasquez had an objectively reasonable belief that defendant was armed with a weapon. As our Supreme Court recently reiterated, "[o]ur legal system has long recognized that cross-examination is the greatest legal engine ever invented for the discovery of truth." State v. Medina, 242 N.J. 397, 413 (2020) (alteration in original) (quoting State v. Basil, 202 N.J. 570, 591 (2010)). Defendant must be afforded that opportunity to test the State's version of the incident through cross-examination.

We therefore hold that the motion court abused its discretion by deciding the suppression motion without an evidentiary hearing. Accordingly, we vacate

the order denying defendant's suppression motion and remand for an evidentiary hearing.

## II.

We next address defendant's argument that the trial court's response to the jury's question improperly permitted the jury to conclude that the loose rubber bands in the evidence bag were found on defendant. He contends that his conviction must be reversed because the instruction was highly prejudicial in light of the testimony of the State's expert. We disagree.

During deliberations, the jury sent the court the following note: "Loose rubber bands in the evidence bag. Questioning if in possession of defendant or loose after evidence." Both parties acknowledged that the State had presented no discovery or testimony that defendant had loose rubber bands on his person at the time of his arrest. The court determined that the jury's inquiry was "a question of fact as to the evidence that was presented in this case" and advised counsel that he would instruct the jury that they should simply rely on their recollection of the evidence as it was presented. Defendant objected in light of Muntone's testimony concerning rubber bands and requested the court to instruct the jury that the rubber bands were placed into the evidence bag by lab technicians. The court explained that it could not provide the requested

19

instruction to the jury and labelled it purely speculative as no testimony had been elicited that the rubber bands had been placed in the bag by lab technicians. Instead, the court provided the following response to the jury's question:

> Your question is focused on a fact that may or may not have been testified to during the trial. The [c]ourt is unable to answer this question because it would, in my opinion, intrude upon your responsibilities to be the finder of facts. As a result, you should rely upon your recollection from the evidence presented during trial to answer this question.

Both detectives identified the bag containing the 133 glassine envelopes of heroin and testified that it was in substantially the same condition as when it was seized from defendant. When asked how the glassine bags were packaged, Vasquez testified "it appears there's some loose ones throughout here. And there's some wrapped in some rubber bands. Commonly [ten] are wrapped in a rubber band, from my experience."

As part of the final jury charge, the court gave the following instruction:

> You are the judges of the facts. And as judges of the facts you are to determine the credibility of the various witnesses as well as the weight to be attached to their testimony. You and you alone are the sole and exclusive judges of the evidence, of the credibility of the witnesses and the weight to be attached. Regardless of what counsel said . . . or I may have said recalling the evidence in the case, it is your recollection of the evidence that should guide you as judges of the facts. Arguments, statements, remarks, openings and

20

summations are not evidence and must not be treated as evidence. Although the attorneys may point out what they think important in this case, you must rely solely upon your understanding and recollection of the evidence that was admitted during the trial.

The court also provided a standard jury instruction regarding the parties' stipulations:

> (1) the 133 glassine envelopes that were marked [in evidence] were delivered to the New Jersey State Police Laboratories and a representative sample was tested . . . and was determined to be heroin, a Schedule I [CDS]; (2) the 133 glassine envelopes were not altered, cha[n]ged or tampered with at any time from the time that the evidence was seized by the Perth Amboy Police to the time that the envelopes were tested and analyzed by the New Jersey State Police Laboratory. Upon completion of the testing process, the 133 glassine envelopes were then returned to the Middlesex County Prosecutor's Office[.]

"Appropriate and proper charges to a jury are essential for a fair trial." State v. Daniels, 224 N.J. 168, 180 (2016) (citing State v. Savage, 172 N.J. 374, 387 (2002)). "[E]rroneous instructions on material points are presumed to possess the capacity to unfairly prejudice the defendant." State v. Baum, 224 N.J. 147, 159 (2016) (quoting State v. Bunch, 180 N.J. 534, 541-42 (2004)).

Since defendant objected, "the applicable standard of review is whether the alleged defective jury charge constitutes harmless error." State v. Josephs, 174 N.J. 44, 94-95 (2002). Under that standard, the error must "raise a

reasonable doubt" that it "led the jury to a verdict it otherwise might not have reached." Baum, 224 N.J. at 159 (quoting State v. Lazo, 209 N.J. 9, 26 (2012)). "The test to be applied . . . is whether the charge as a whole is misleading, or sets forth accurately and fairly the controlling principles of law." Ibid. (alteration in original) (quoting State v. Jackmon, 305 N.J. Super. 274, 299 (App. Div. 1997)). Accordingly, the effect of any error "must be evaluated in light 'of the overall strength of the State's case.'" State v. Walker, 203 N.J. 73, 90 (2010) (quoting State v. Chapland, 187 N.J. 275, 289 (2006)).

When reviewing a trial court's response to a jury question, we must determine whether the court "erred in its response and, if so, whether that 'error undermines our confidence that the deliberative process produced a just result and the conviction must be reversed.'" State v. Lykes, 192 N.J. 519, 537 (2007) (quoting State v. Parsons, 270 N.J. Super. 213, 224-25 (App. Div. 1994)).

Applying these standards, we conclude that the trial court fairly and adequately instructed the jury in response to their question. Considering the testimony of the detectives and the stipulations, the court properly refrained from infringing on the jury's fact-finding function. Instructing the jury to rely on its recollection of the evidence presented was appropriate. We discern no error, much less harmful error.

A-1902-18T3

## III.

In sum, we remand for the trial court to conduct an evidentiary hearing on defendant's suppression motion. If the court suppresses the evidence seized from defendant, it shall enter an order vacating the conviction and schedule the case for retrial. If the court denies the motion, the judgment of conviction will remain in full force and effect.

Remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1902-18T3