**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0480-22

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

KINTAYE Z. CRAWFORD,

    Defendant-Appellant.

_____

Submitted December 11, 2023 – Decided January 16, 2024

Before Judges Marczyk and Chase.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 21-02-0075.

Joseph E. Krakora, Public Defender, attorney for appellant (Laura B. Lasota, Assistant Deputy Public Defender, of counsel and on the brief).

Yolanda Ciccone, Middlesex County Prosecutor, attorney for respondent (Randolph E. Mershon III, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Kintaye Crawford appeals the trial court's September 10, 2021 order denying his motion to suppress physical evidence police seized during a warrantless pat-down of his person following a motor vehicle stop. Defendant also appeals the trial court's May 18, 2022 order denying his motion for reconsideration. Lastly, defendant challenges the prison sentence imposed. Based on our review of the record and the applicable legal principles, we affirm.

I.

In February 2021, a Middlesex County grand jury returned an indictment charging defendant with the following: fourth-degree obstruction of the administration of law, N.J.S.A. 2C:29-1(a) (count one); third-degree resisting arrest, N.J.S.A. 2C:29-2(a)(1) and 2C:29-2(a)(3)(a) (count two); and second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b)(1) (count three). Defendant subsequently moved to suppress physical evidence.

We derive the following facts from the record developed at the September 2021 suppression hearing. At approximately 9:45 p.m. on November 12, 2020, Piscataway Police Department Detective Jerry Nichols and his supervisor, Detective Sergeant Michael Coffey, were on patrol in an unmarked police car in the area of Hazelwood Place and West Fourth Street. Both Detectives Nichols and Coffey were assigned to the Narcotics Bureau. Their vehicle was equipped

2

with a mobile video recorder system which had one microphone that was placed in Detective Nichols' shirt pocket.

The detectives parked their vehicle on Hazelwood Place near the intersection with West Fourth Street. While parked, both detectives observed a black Kia sedan without a rear license plate traveling in the southbound lane of Hazelwood Place. The Kia approached the intersection and made a right turn. In making this turn, the Kia failed to make a complete stop at the stop sign before continuing westbound on West Fourth Street. The detectives began to follow the Kia and again observed the vehicle failed to make a complete stop at West Fourth Street and Walnut Street. The detectives subsequently activated their emergency lights and initiated a motor vehicle stop. The detectives exited their unmarked patrol vehicle and approached the Kia. Detective Coffey approached the driver's side of the vehicle and identified the driver as Janiyyah M. Jones, while Nichols approached the passenger side and identified the front seat passenger as defendant.

While speaking to the occupants, Detective Nichols smelled a "pretty pungent" odor of raw marijuana emanating from the interior of the vehicle. Detective Coffey also detected the "strong" smell of raw marijuana coming from the interior of the car through the open driver's side window and signaled to

A-0480-22

Detective Nichols by pointing to his nose. While the detectives were speaking with the occupants of the vehicle, additional officers, Michael Sexton and Rob Mercer, arrived on scene. Detective Coffey ran Jones and defendant for warrants; neither had any. Using his flashlight to illuminate the inside of the Kia, Detective Nichols observed a blue-green vial containing suspected marijuana in the center console area. Officer Sexton, who had arrived as backup, told Detective Coffey he had observed a vial of suspected marijuana in the center console area. Detective Coffey confirmed that observation himself by looking into the car. Detective Coffey testified the vial was in an area behind where an elbow would rest on the center console.

Coffey went to the passenger side of the Kia to commence a probable cause search of the car based on the observation of marijuana. Detective Coffey approached the passenger side of the vehicle, and defendant was asked to step out. Initially, defendant cooperated with the officers' requests. When defendant exited the car, he reached for his waistband, which concerned Detective Coffey. Detective Coffey grabbed defendant's wrists, and defendant was resistive. Detective Coffey stated defendant was tensing up, moving his hands, and pulling away. At that point, the officers secured defendant's wrists, "for safety precautions," and placed him in handcuffs. Detective Coffey began to conduct

A-0480-22

a pat-down search of defendant. While Detective Coffey was near defendant's inner thigh, he felt a "hard bulge," and he immediately identified the object as a gun. Detective Coffey alerted the officers about the gun. Defendant then lunged into the passenger's seat of the car, and Detective Coffey dove on top of him in an attempt to secure the gun.

After defendant was secured, Detective Coffey retrieved a loaded semi-automatic handgun from defendant's pants. Defendant was placed under arrest and secured in the rear of a patrol vehicle. The rest of the vehicle was searched. Marijuana was then seized from a container in the center console.

In an oral ruling, the trial court denied the suppression motion. The trial court found the officers' testimony to be "very credible" and "consistent" with the video of the stop. The court found the stop was lawfully based on the detectives' observations of the motor vehicle violations and held that the detectives had probable cause to search the Kia for contraband based on the odor of marijuana and the plain view observation of the suspected vial of marijuana. Finally, the trial court held the search of defendant's person was a reasonable and lawful pat-down for weapons and that the gun was immediately identified during that frisk. The court noted the specific and particularized reasons for the pat-down included defendant's non-compliance with directions, refusing to

A-0480-22

place his hands on the car, fidgeting with his waistband, and furtive movements. The trial court concluded that Detective Coffey was justified in seizing the gun from defendant's pants.

In December 2021, defendant's private counsel was relieved, and defendant was assigned counsel from the Office of the Public Defender. In April 2022, the newly assigned counsel moved for reconsideration of the trial court's suppression decision. Defendant argued the search of defendant was not limited to a pat-down for weapons. Defendant asserted the search was a full search, and the video footage depicted Detective Coffey reaching into defendant's pockets, removing items, and placing those items on the vehicle. Defendant further argued that, even if the search was a limited frisk for weapons, there were no articulable facts to support the suspicion that defendant was armed at the time of the search.

The court initially observed the motion for reconsideration was untimely under Rule 1:7-4. Nevertheless, the court considered the merits of the arguments. It noted defendant failed to present any new case law that would demonstrate the court's prior decision was palpably incorrect or irrational. The court further noted the motion "merely reargue[d] the original motion." Accordingly, the court denied the motion for reconsideration.

6

Defendant subsequently pled guilty to count three, second-degree unlawful possession of a handgun. The State agreed to recommend a custodial sentence of seven years with forty-two months of parole ineligibility, subject to the "Graves Act," N.J.S.A. 2C:43-6(c). The State also agreed to dismiss the remaining charges. Pursuant to Rule 3:9-3(f), defendant preserved the right to appeal the denial of his motion to suppress. On September 30, 2022, the trial court sentenced defendant in accordance with the plea agreement to a custodial term of seven years with forty-two months of parole ineligibility.

## II.

On appeal, defendant raises the following issues:

POINT I

THE TRIAL COURT ERRED WHEN IT DETERMINED THAT THE GUN WAS SEIZED DURING A LAWFUL PAT-DOWN SEARCH OF DEFENDANT'S PERSON.

POINT II

THE SENTENCING COURT ERRED WHEN IT RELIED ON DEFENDANT'S JUVENILE RECORD AND HIS HALLMARK FEATURES OF YOUTH IN AGGRAVATION AT SENTENCING

A.

In assessing defendant's arguments related to the pat-down search, we apply well-settled principles. We recognize that under the United States and New Jersey Constitutions, a warrantless search by police officers is invalid unless it is justified by an established exception to the warrant requirement. State v. Cohen, 254 N.J. 308, 319 (2023). If the State fails to prove such an exception applies, the evidence seized must be suppressed. Ibid.

"When reviewing a trial court's decision to grant or deny a suppression motion, appellate courts 'must defer to the factual findings of the trial court so long as those findings are supported by sufficient evidence in the record.'" State v. Dunbar, 229 N.J. 521, 538 (2017) (quoting State v. Hubbard, 222 N.J. 249, 262 (2015)). Trial courts are owed deference because of their "opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." State v. Ahmad, 246 N.J. 592, 609 (2021) (quoting State v. Elders, 192 N.J. 224, 244 (2007)). However, "[a] trial court's legal conclusions . . . are reviewed de novo," and factual findings that are "clearly mistaken" must be reversed in the interest of justice. Cohen, 254 N.J. at 319 (first quoting Ahmad, 246 N.J. at 609; then quoting State v. Gamble, 218 N.J. 412, 425 (2014)). If the reviewing court finds that the officers acted

unconstitutionally, the fruits of the search must be suppressed.  State v. Patino, 83 N.J. 1, 14-15 (1980).

Defendant does not challenge the initial stop of the vehicle, nor does he challenge the search of the vehicle.  After smelling marijuana, the detectives asked defendant to get out of the vehicle so that the interior of vehicle could be searched.  Under then-applicable law,[1] the odor provided the police with grounds to remove the passengers and search the passenger compartment of the car. Cohen, 254 N.J. at 308.

We thus direct our attention to the next phase of this encounter—the pat-down of defendant's pants.  Defendant argues the detectives did not have a reasonable, articulable suspicion, based on specific facts, that he was armed and dangerous, and, thus, the detectives could not lawfully conduct a frisk.

---

[1]  The search at issue predates the 2021 passage of the Cannabis Regulatory, Enforcement Assistance, and Marketplace Modernization Act (CREAMMA), N.J.S.A. 24:6I-31 to -56, which added a new section in the Criminal Code stating that neither "the odor of cannabis or burnt cannabis," nor the "possession of marijuana or hashish without evidence of quantity in excess of any amount that would exceed the amount . . . which may be lawfully possessed," "shall, individually or collectively, constitute reasonable articulable suspicion of a crime[,]" except on school property or at a correctional facility.  N.J.S.A. 2C:35-10(a), (c).  "[G]oing forward [after CREAMMA], we anticipate that cases involving the automobile exception and probable cause to search a vehicle based solely on the smell of marijuana will likely be few and far between."  Cohen, 254 N.J. at 328.

A-0480-22

Defendant further asserts that Detective Coffey was acting on a hunch based on his statement after the discovery of the gun and defendant's arrest where he stated, "I just got that idea that he had a gun, man . . . . As soon as I saw him, I thought this kid probably has a gun." Further, even if the totality of the circumstances provided the detectives with the requisite suspicion to conduct a pat-down search, Detective Coffey exceeded the limited scope of a pat-down search when he began removing items from defendant's pockets. Because the search of defendant's person exceeded the limits of a permissible frisk for weapons, it was illegal, and the gun should have been suppressed.

The State counters the trial court properly found the detectives' initial encounter with defendant was an investigative detention amply supported by reasonable suspicion that defendant was concealing contraband or armed with a weapon. The State submits the trial court properly found that the detectives' actions were reasonable and justified, given defendant's action as he was exiting the vehicle, and the motion to suppress should be affirmed.

In denying the motion suppress, the trial court noted:

> Defendant, in this court's opinion, was non-compliant. He wasn't so much resistant as . . . discussed during the hearing but rather would be best described as non-compliant.

A-0480-22

. . . Defendant repeatedly was fidgeting with his waistband and was not complying with the officer's instructions to place his hands on the car. The officers had, as a result, . . . specific and particularized reasons to believe that [d]efendant might . . . be concealing contraband or a weapon, especially because they believed that there was contraband in the vehicle.

The officers then reasonably conducted a pat down of . . . [d]efendant at the scene to ensure that . . . [d]efendant was not armed before the police could continue their investigation regarding the search of the automobile, as well as the occupants. . . . Defendant's furtive movements created risk for the officers and caused the officer to exercise heightened caution.

We affirm substantially for the reasons noted by the trial court. We note when defendant exited the vehicle, he grabbed his waistband, was pulling away from the detectives, and was not cooperative in placing his hands on the car. At that juncture, the detectives were justified in handcuffing defendant for reasons of officer safety. Defendant's conduct provided the detectives reason to believe he could have been reaching for a weapon concealed in his pants. In this circumstance, defendant's conduct was more indicative of danger and potentially being armed than the nervous conduct of the defendants noted in State v. Nyema, 249 N.J. 509, 530-31 (2022) (citing e.g., State v. Rosario, 229 N.J. 263, 277 (2017); State v. Lund, 119 N.J. 35, 47 (1990)).

A-0480-22

Turning to the subsequent pat-down, it is well-established under the federal and New Jersey constitutions that the police may stop and frisk a person if they have reasonable suspicion that evidence of criminal activity or a weapon may be found on that person. Terry v. Ohio, 392 U.S. 1, 26-27 (1968); State v. Smith, 155 N.J. 91-92 (1998). This standard of reasonable suspicion is less rigorous than probable cause. Terry, 392 U.S. at 26-27. In the course of a permissible Terry stop and frisk, the police are authorized to "conduct a carefully limited search of the outer clothing" of the person. Id. at 30; see also State v. Thomas, 110 N.J. 673, 678 (1988).

We agree with the trial court the detectives had reasonable suspicion to perform a pat-down frisk of defendant under the Terry doctrine. Despite Detective Coffey's statements following the arrest about his thought defendant might have a gun, the totality of circumstances independently supported a reasonable suspicion for the pat-down, including defendant reaching for his waistband, flailing his hands, and pulling away from the detectives. Moreover, we do not focus on the officer's subjective intent. See State v. Diaz, 470 N.J. Super. 495, 522-23 (App. Div. 2022). Rather, under Fourth Amendment analysis, reviewing courts apply an objective test of reasonableness to evaluate police conduct. State v. Gonzales, 227 N.J. 77, 82 (2016). Absent evidence of

impermissible racial profiling or some other constitutionally impermissible motive, the officer's intent or motive is irrelevant because the Fourth Amendment "proscribes unreasonable actions, not improper thoughts." State v. Bruzzese, 94 N.J. 210, 219 (1983). We further note the pat-down was directed appropriately at defendant's outer clothing.[2]

We are also unpersuaded by defendant's argument the detectives exceeded the limited scope of a pat-down search when he began removing items from defendant's pockets. The presence or absence of probable cause to search defendant's pockets is a distinct issue from whether police had reasonable suspicion to frisk his pants. First, there were no charges filed against defendant

---

[2] The trial judge explained:

> Here, following the lawful traffic stop and the officer discovering the contraband in the vehicle, the officer's discovery of the handgun on . . . [d]efendant during a lawful pat down of [d]efendant's outer clothes, the officer felt an object in [d]efendant's pants. He identified the object immediately as a handgun due to its shape and feel. It was readily apparent to the officer that the object in [d]efendant's pants was a handgun, and in fact it turned out to be a handgun. Therefore, the officer was justified in reaching into [d]efendant's pants to retrieve the handgun, because the handgun was immediately apparent in the pat down of . . . [d]efendant[].

stemming from the search of his pockets. Moreover, the pat-down was unrelated to the search of defendant's pockets, and detectives did not rely on the discovery of any evidence from defendant's pockets to justify the pat-down that revealed the gun. We therefore affirm the court's denial of defendant's motion to suppress the seized handgun. Given our analysis the pat-down was justified based on defendant's actions when he was removed from the vehicle, we need not address whether the search was also valid as a search incident to an arrest.

B.

Defendant next argues the sentencing court weighed defendant's hallmark features of youth against him at sentencing, and the sentence should be reversed and remanded for resentencing to a lesser term. Defendant notes the trial court determined N.J.S.A. 2C:44-1(a)(3), (6), and (9) (risk of re-offense, defendant's prior criminal record, and the need for deterrence) substantially outweighed mitigating factor fourteen, N.J.S.A. 2C:44-1(b)(14) (defendant was under twenty-six years old at the time of the offense) in imposing the sentence. Defendant notes that although mitigating factor fourteen was applied because defendant was nineteen years old during the offense, the court overly relied on defendant's "defiant" and "anti-social" behavior during the motor vehicle stop

14

and his failure to attend the pre-sentencing report interview to find the aggravating factors outweighed the mitigating factors.

Sentencing decisions are discretionary in nature. State v. Cuff, 239 N.J. 321, 347 (2019). Therefore, we review for an abuse of discretion. State v. Jones, 232 N.J. 308, 318 (2018). We defer to the sentencing court's factual findings and should not "second-guess" them. State v. Case, 220 N.J. 49, 65 (2014).

A sentence should be affirmed "unless: (1) the sentencing guidelines were violated; (2) the findings of aggravating and mitigating factors were not 'based upon competent credible evidence in the record;' or (3) 'the application of the guidelines to the facts' of the case 'shock[s] the judicial conscience.'" State v. Bolvito, 217 N.J. 221, 228 (2014) (alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).

The trial judge comprehensively considered the applicable aggravating and mitigating factors. The court observed aggravating factor six (extent of prior record) applied, given defendant had a "significant" juvenile record coupled with the seriousness of the offenses including adjudications involving weapons. The court noted defendant's pattern of defiance toward the rule of law in view of his juvenile record, along with committing a serious offense at age nineteen, support aggravating factor three (risk of re-offense).

A-0480-22

Furthermore, the court determined aggravating factor nine (need for deterrence) was implicated as there was a clear need to deter defendant from committing other offenses along with a more general need to deter this type of behavior in society at large. The court further recognized mitigating factor fourteen was applicable, given defendant was under twenty-six years of age when the crime was committed and the prospect that he could seek help to resolve whatever issues were causing him to disregard the law. In balancing the factors, the court determined, based on the totality of the circumstances, the aggravating factors "substantially outweighed the mitigating factor" and that the plea agreement was fair and reasonable.

Appling the above principles, we discern no error in the trial judge's consideration of the aggravating factors and mitigating factors. The trial judge appropriately considered defendant's age as a mitigating factor. There is no indication the court considered defendant's youth as an aggravating factor. The court applied the facts of this case to the applicable law. There was ample evidence in the record to support the court's conclusions.

To the extent we have not addressed any remaining contentions, it is because they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

A-0480-22

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

17