**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3635-22

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

ROBERT LOVE,

    Defendant-Appellant.

_____

Argued October 9, 2024 – Decided October 28, 2024

Before Judges Paganelli and Torregrossa-O'Connor.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Indictment No. 22-08-2442.

Alyssa Aiello, Assistant Deputy Public Defender, argued the cause for appellant (Jennifer N. Sellitti, Public Defender, attorney; Alyssa Aiello, of counsel and on the brief).

Kevin J. Hein, Assistant Prosecutor, argued the cause for respondent (Grace C. MacAulay, Camden County Prosecutor, attorney; Kevin J. Hein, of counsel and on the brief).

PER CURIAM

Defendant Robert Love appeals the trial court's denial of his motions to suppress evidence found after a warrantless traffic stop and for reconsideration of that decision.  Because we conclude the trial court did not err in determining police lawfully conducted a pat-down search of defendant after ordering him out of the vehicle, we affirm.

I.

Following the June 6, 2022 warrantless motor vehicle stop and pat-down of defendant's person that revealed a firearm and controlled dangerous substance (CDS), an indictment charged defendant with one count of second-degree unlawful possession of a firearm, N.J.S.A. 2C:39-5(b)(1), two counts of third-degree possession of CDS, N.J.S.A. 2C:35-10(a)(1), and one count of  second-degree possession of a firearm by certain persons not to have weapons, N.J.S.A. 2C:39-7(b)(1).   Defendant filed a motion to suppress challenging the constitutionality of law-enforcement's ordering defendant from the car and frisking defendant for weapons based in part on a confidential informant's (CI) tip.[1]

By order and oral decision on February 16, 2023, the trial court denied

---

[1]  Defendant has consistently represented in both the trial court and on this appeal that he does not challenge the lawfulness of the police stop.  As such, that issue is not before us.

defendant's motion to suppress.  Several months later, the court similarly denied

defendant's motion for reconsideration, and in June 2023 defendant pled guilty

to second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b)(1), and

the court imposed a sentence of five years' imprisonment with forty-two months

of parole ineligibility, pursuant to the Graves Act, N.J.S.A. 2C:43-6(c).[2]

A.    The Motion Record

At the suppression hearing, the State presented testimony from Camden

County Police Detective Michael Lichty who conducted the stop and pat-down

search of defendant around midnight on June 6, 2022.  Lichty, then assigned to

the Community Impact Division (CID), had been employed by the Camden

Police Department since 2015.  While in a marked police unit, the detective

received a call from Camden Narcotics and Gang Unit (NGU) Detective

Nicholas Palermo, advising that a known informant provided information

regarding a "male in possession of a firearm riding around the Yorkship Square

area in a gold Kia [Optima] sedan with the first three [characters] of the

registration I believe being Lima, 8, 5[] [and t]he male was inside the vehicle

wearing a fanny pack with a .44 [M]agnum inside of it."  Lichty explained that

---

[2]  The court imposed the sentence to run concurrent with a three-year sentence for third-degree possession of CDS with intent to distribute on an unrelated charge.  Defendant is not appealing his conviction or sentence on that offense.

Palermo passed the information to CID as "the marked police presence in the city for the [NGU]," and CID conducted stops for NGU when needed.

The detective testified that the CI had provided information in the past, typically regarding "[p]ersons in possession of . . . weapon[s]," approximately twenty times, and on those previous occasions was reliable approximately seventy-five percent of the time. On cross-examination, Lichty conceded that some of the tip's details were not memorialized in his report; specifically, he did not document the CI's past reliability or the portion of the tip indicating a .44 Magnum firearm would be inside a fanny pack. He explained details are sometimes omitted from written reports to avoid revealing facts that might risk exposing the informant's identity.

Lichty indicated that he was unaware whether Palermo prepared a report recording how the tip was made or its details. He also confirmed that he did not know the basis of the CI's knowledge, as Palermo received the information directly from the source.

The detective recounted receiving the information from Palermo and heading to the location where he observed "a gold four door Kia [Optima] sedan bearing the first three New Jersey license plate [characters], Lima, 8, 5." Upon observing a seatbelt violation, he conducted a motor vehicle stop on that basis.

Another officer approached the driver's side as Lichty approached the passenger's side and observed defendant "wearing the fanny pack as described by the CI." He explained that defendant wore the bag across his chest, first testifying defendant held the bag to his body with his left hand before clarifying that defendant held a cell phone in his left hand and a cigarette in his right hand "holding [the bag] close to [his] body as a concealed bulge." From his training and experience, Lichty considered this a "furtive movement" "consistent with somebody that's armed with a firearm in an attempt to conceal any bulges." Further, defendant appeared "visibly nervous as his hands were shaking."

Police video depicted defendant positioning his left arm, which appeared to be wrapped at the wrist with a bandage or cast, over the bag and close to his body while his right arm was bent at the elbow with his right hand up next to his upper body holding a lit cigarette. "[B]eliev[ing] [defendant] to be armed and dangerous at that time," Lichty ordered defendant out of the car, handcuffed and frisked defendant for weapons, and "immediately felt what [he] knew to be a weapon inside the fanny pack." The video depicts the pat-down took seconds and was limited to the bag and upper body area. Police then secured the bag, where CDS and a .44 Magnum firearm were later located.

At the conclusion of the testimony, defendant claimed the police unconstitutionally ordered him out of the vehicle without heightened caution for their safety, and the subsequent pat-down lacked reasonable and articulable suspicion that defendant was armed. Defendant contended the tip deserved "little weight if . . . any" because it did not allege criminality and was "wholly unreliable."

The State emphasized the known informant's tip was specific and corroborated when police found the precise vehicle with a male occupant wearing a fanny pack across his chest. Lichty then perceived defendant nervously attempting to conceal the bag and justifiably ordered defendant out of the vehicle in heightened caution for police safety and with reasonable suspicion to frisk defendant for weapons.

B.    Suppression Decision

The court denied the motion, finding Lichty's testimony credible, noting his professional demeanor, his calmly answering questions directly without evasion, and admitting when he lacked specific first-hand knowledge regarding the tip. The trial court reasoned that Lichty's lack of direct knowledge did not undermine the reasonableness of his actions given the interrelationship between NGU and CID, stating, "if such a detailed tip is given to law enforcement about

6

a person in the streets in a vehicle with a gun, that is not information that they should sit on and wait. That is not the purpose of these two units." The court found CID, "in the trenches" and "on the front line," reasonably relied upon the information received from NGU.

The court explained:

> [Lichty's] explanation was a reasonable one. Those officers driving in marked vehicles in the streets of the cities aren't the ones receiving the tips directly, be that from confidential informants, anonymous tips, concerned identified citizens, et cetera. They are there to respond to the information provided to them, in this case from Detective Palermo of the [NGU].

Accordingly, the court found Lichty properly relied upon the tip relayed to him from Palermo to guide his actions.

The court recognized the "specificity" in the tip, including "[s]pecific streets," "a male having a firearm[] . . . in a gold Kia Optima," and "characters of the license plate." The court credited the reliability of the CI, based on past interactions with NGU and degree of accuracy. Regarding the absence of detail in written police reports, the court accepted that CI information is "sensitive" and can "in the wrong hands" threaten the informant's safety.

The trial court then reviewed the testimony and evidence and determined under the totality of the circumstances that the order of defendant out of the

7

A-3635-22

vehicle and subsequent pat-down of defendant for weapons was lawful. The court found the tip corroborated when Lichty located defendant in the specific vehicle identified by the CI, and CID stopped the car for a motor vehicle seatbelt violation. The court noted the video confirmed Lichty's testimony about defendant's movements and supported Lichty's belief in his training and experience that defendant tried to furtively conceal the bag and "any bulges in it." Defendant's nervousness, the court determined, added to the equation and justified the detective's "heightened awareness of the danger that would warrant an objectively reasonable officer in securing the scene in a more effective manner by ordering the passenger to leave the car."

Similarly, the trial court concluded that, "given the totality of the circumstances[,] here . . . the detailed tip, the detective's observations of . . . defendant's furtive movements, the detective's view and experience finding the defendant to be nervous," Lichty had reasonable suspicion to believe defendant might be armed. Thus, the court, citing applicable legal principles, determined the "limited Terry[3] frisk of the fanny pack" was constitutional as an objectively reasonable officer would be "warranted in the belief that his safety

---

[3] Terry v. Ohio, 392 U.S. 1 (1968).

or that of others was in danger."

C.     <u>Motion for Reconsideration</u>

Defendant filed a motion for reconsideration of the suppression decision, and the State thereafter provided a supplemental report[4] prepared by Palermo, which was dated September 14, 2022. Regarding the CI's tip, Palermo's supplemental report stated:

> On June 6[], 2022[,] at approximately 0007 hours, I Detective Palermo#850 received information from a confidential source stating that a male inside of a gold Kia Optima was armed with a firearm. The confidential source further stated that the registration of the vehicle was New Jersey L85[***].[5] The confidential source has provided information in the past that has [led] to numerous firearm arrest[s].

The court heard and denied the reconsideration motion on May 26, 2023. At the hearing defendant argued: (1) the State violated its discovery obligations under <u>Rule</u> 3:13-3 by failing to turn over Palermo's report; (2) the court afforded improper weight to Lichty's testimony based on unreliable hearsay; and (3) Lichty was not a credible witness and lacked personal knowledge of the CI's tip

---

[4] Although it is difficult to discern from the record precisely when defendant initially filed the motion, it appears undisputed the report was produced after the reconsideration motion was filed.

[5] The Palermo report contained all six license plate characters, but we redact for privacy purposes.

and reliability. The State contended nothing in Palermo's report undermined the court's earlier decision.

The trial court, by order and oral decision that same day, denied the motion. The court addressed the late discovery, accepting the State's representations that it repeatedly requested any supplemental reports in this case and did not receive the Palermo report until March 22, 2023. The court next found the Palermo report was not inconsistent with Lichty's testimony and did not impact Lichty's credibility. The court reviewed again the testimony and found it was not inadmissible hearsay, but instead properly explained the basis for Lichty's actions. The court reiterated in detail its earlier findings and found no basis to depart from its determination that the State met its burden to show the police acted lawfully under the totality of the circumstances.

II.

Defendant raises the following arguments on appeal:

POINT I

THE TRIAL COURT ERRED IN DENYING SUPPRESSION, BECAUSE POLICE DID NOT HAVE REASONABLE SUSPICION TO HANDCUFF AND FRISK DEFENDANT AFTER REMOVING HIM FROM A CAR STOPPED FOR A SEATBELT VIOLATION. ALTERNATIVELY, THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION FOR RECONSIDERATION.

A. The State Did Not Sufficiently Establish The Informant's Veracity Or Basis Of Knowledge.

B. Because It Was Clear From Palermo's Report That The C.I. Did Not Describe The Male In The Kia As Wearing A Fanny Pack, The Trial Court's Finding That Palermo's Report Was Consistent With Lichty's Testimony Was So Clearly Mistaken That The Order Denying Reconsideration Must Be Reversed.

III.

We must defer to the trial court's factual findings when reviewing decisions on motions to suppress evidence "so long as those findings are supported by sufficient evidence in the record." State v. Hubbard, 222 N.J. 249, 262 (2015). We afford such deference because of the trial court's "opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." State v. Ahmad, 246 N.J. 592, 609 (2021) (quoting State v. Elders, 192 N.J. 224, 244 (2007)). By contrast, "conclusions of law are reviewed de novo." Zaman v. Felton, 219 N.J. 199, 216 (2014).

We review with deference a trial court's denial of a motion for reconsideration and disturb those findings only upon an abuse of discretion. See State v. Puryear, 441 N.J. Super. 280, 293-94 (App. Div. 2015). We find an abuse of discretion only when a decision lacked "a rational explanation, inexplicably departed from established policies, or rested on an impermissible

11

basis." U.S. Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 467 (2012) (quoting Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 123 (2007)).

IV.

The Fourth Amendment of the United States Constitution and Article I, paragraph 7 of the New Jersey Constitution protect "against unreasonable searches and seizures." U.S. Const. amend. IV; N.J. Const. art. I, ¶ 7. Warrantless searches and seizures are presumptively invalid, and the State must prove by a preponderance of the evidence that a search or seizure falls within one of the few, narrowly circumscribed exceptions to the warrant requirement. See State v. Patino, 83 N.J. 1, 7 (1980).

We focus on the legality of law enforcement's ordering defendant from the vehicle and frisking him, leading to detection of the firearm and CDS.

New Jersey's Constitution requires that "an officer must be able to point to specific and articulable facts that would warrant heightened caution to justify ordering the occupants to step out of a vehicle detained for a traffic violation." State v. Smith, 134 N.J. 599, 618 (1994); see also State v. Bacome, 228 N.J. 94, 106 (2017).

> [T]he officer need point only to some fact or facts in the totality of the circumstances that would create in a police officer a heightened awareness of danger that would warrant an objectively reasonable officer in

12

> securing the scene in a more effective manner by ordering the passenger to alight from the car.
>
> [Smith, 134 N.J. at 618.]

To justify a warrantless pat-down search for weapons, more is required. Police may conduct a frisk for officer safety without a warrant or probable cause only upon objectively reasonable suspicion that the suspect is armed. Terry, 392 U.S. at 37. A pat-down search is justified if "a reasonably prudent person would be warranted in the belief that his or her safety or that of others was in danger." State v. Lund, 119 N.J. 35, 45 (1990) (citing State v. Thomas, 110 N.J. 673, 685 (1988)). "The essence of this standard is 'that the totality of the circumstances—the whole picture—must be taken into account." Thomas, 110 N.J. at 678 (quoting United States v. Cortez, 449 U.S. 411, 417 (1981)). If the police have reasonable suspicion that a weapon may be found, they may conduct a "carefully limited search of the outer clothing" of the person. Terry, 392 U.S. at 30.

Reasonable suspicion is a lower standard than probable cause. See State v. Stovall, 170 N.J. 346, 356 (2002). In determining whether an officer acted reasonably, "due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." Terry, 392 U.S. at 27. An officer with "objectively-credible reason to believe that the suspect is armed"

13

need not believe that violent criminal activity is imminent, as reviewing courts recognize "law-enforcement officers are particularly vulnerable to violence often becoming its victims." State v. Valentine, 134 N.J. 536, 545-46 (1994) (recognizing courts "must evaluate the reasonableness of a Terry frisk in that context").

Although ordering passengers out of stopped vehicles and weapon frisks are scrutinized by different legal standards, here, the same facts provided the basis for both. Defendant claims the record did not support the veracity or reliability of the CI's tip, and therefore the trial court erred in giving weight to that information in the totality of the circumstances. We disagree.

The State did not seek to justify the police conduct, and the court did not rest its decision, on the uncorroborated tip alone. We recognize, as did the trial court, "an informant's 'veracity,' 'reliability,' and 'basis of knowledge' are 'relevant in determining the value of [a CI's] report.'" State v. Rodriguez, 172 N.J. 117, 127 (2002) (quoting Alabama v. White, 496 U.S. 325, 328 (1990)). We similarly note, however,

> "if a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable." Stated differently, courts have found no constitutional violation when there has been "independent corroboration by the police of significant

14

aspects of the informer's predictions[.]" The analysis in any given case turns ultimately on the totality of the circumstances.

[Rodriguez, 172 N.J. at 127-28 (alteration in original) (citations omitted) (quoting White, 496 U.S. at 330-32).]

The trial court clearly found that the tip's specifics were sufficiently corroborated by the police investigation, and combined with defendant's behavior, warranted the limited protective action taken here. It concluded the totality of the circumstances provided not simply heightened suspicion to order defendant from the vehicle, but an objectively reasonable suspicion that defendant might be armed, warranting securing defendant and patting him down for weapons. We discern no abuse of discretion.

The court gave its reasons for accepting Lichty's testimony as credible despite omissions in his report, noting the sensitivity of CI information that often leads police to memorialize fewer details in their reports. Lichty emphasized the symbiotic relationship between CID patrol and NGU. The court credited Lichty's testimony and found he reasonably relied on the information Palermo provided from a known CI proven reliable in the past. Police located the exact vehicle in the precise location the CI identified, and after a motor vehicle stop,

15

Lichty saw defendant, a male, wearing a fanny pack. Thus, the court found many aspects of the tip were independently corroborated.

From there, the court recounted that Lichty perceived defendant as nervous and furtively attempting to conceal the bag, and any detectible bulge or contour otherwise visible, and noted the video confirmed defendant's movements. The court found the now-largely corroborated CI's tip that the bag contained a firearm, together with defendant's actions during the midnight stop, provided articulable heightened suspicion to order defendant out of the car and objectively reasonable suspicion to conduct what the court found was a limited protective frisk of the outside of the bag strapped to defendant's chest. Affording the trial court its appropriate deference in its credibility determinations and factual findings and inferences, we find no abuse of discretion.

We similarly give deference to the court's detailed determination on reconsideration that the contents of and omissions from the belated supplemental Palermo report did not affect its prior decision. We see no basis to disturb those findings, as the court detailed its reasons, which were rooted in both the record and applicable law.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

16